COMMONWEALTH *vs.* ABE STRAUSS.

Plymouth.    March 20, 1905. — May 19, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & BRALEY, JJ.

*Unfair Competition.    Sale.*

R. L. c. 56, § 1, making it a criminal offence to impose a condition in the sale of goods " that the purchaser shall not sell or deal in the goods . . . of any other person ", does not prohibit a sale of goods by a manufacturer with an agreement to give a reasonable discount at the end of a certain period if during that period the purchaser has not dealt in goods of the same kind made by any other manufacturer.    Whether, if the original price was made so high and the discount so large as virtually to require the buyer not to deal· in the goods of others, the sale would come within the terms of the statute was not considered, nor was the question of the constitutionality of the statute.

KNOWLTON, C. J.    Section 1 of chapter 56 of the Revised Laws is as follows : " A person, firm, corporation or association of persons, doing business in this Commonwealth, shall not make it a condition of the sale of goods, wares or merchandise that the purchaser shall not sell or deal in the goods, wares or merchandise of any other person, firm, corporation or association of persons ; but the provisions of this section shall not prohibit the appointment of agents or sole agents for the sale of, nor the making of contracts for the exclusive sale of, goods, wares or merchandise.    Whoever, as principal or agent, violates the provisions of this section, shall be punished for the first offence by a fine of not less than fifty nor more than one hundred dollars; and for each succeeding offence by a fine of not less than one hundred nor more than five hundred dollars or by imprisonment for not more than one year, or by both such fine and imprison-

ment." An indictment was found against the defendant under this section, charging him, in five counts for as many different offences, with having made it a condition of the sale of certain merchandise, to wit, the plug tobaccos of the Continental Tobacco Company, that the purchaser should not sell nor deliver any of certain merchandise, to wit, the plug tobaccos of any other person, firm or corporation, or association of persons, etc. The defendant was a salesman employed by the Continental Tobacco Company to solicit orders from purchasers and forward them to the office of his employer in New York City to be filled. The evidence tended to show that he sold tobacco to the persons mentioned in the indictment as purchasers, at list prices, agreeing to give them a trade discount of two per cent, and if the bill was paid within ten days a further cash discount of two per cent, and if they handled the plug tobaccos of the Continental Tobacco Company exclusively, that is, handled and dealt in no plug tobacco made by any manufacturer other than the Continental Tobacco Company, to give them, at the expiration of a stated period, a further amount equal to six per cent of the amount of their purchases during such period. The defendant introduced no evidence. Various requests for instructions to the jury were made by the defendant, which we need not consider in detail. The presiding judge refused these requests, and, subject to the defendant's exception, instructed the jury as follows: "Upon all the evidence if you are satisfied that the defendant, acting for the Continental Tobacco Company, offered for sale to the person or concern named in either count of the indictment the plug tobacco made by the Continental Tobacco Company upon more favorable terms if such person or concern should not sell or deal in the plug tobacco of any other person, firm, corporation, or association of persons, it will be your duty to find the defendant guilty under any such count." The jury returned a general verdict of guilty.

The first question is whether this instruction was correct. The statute was evidently aimed at unfair competition designed to crush rivals and to create a monopoly. It is conceivable that a great proprietor, manufacturing and selling a certain kind of goods which are in great demand in the market, might largely increase his own trade and largely diminish that of his rivals by

refusing to sell any of his goods to dealers, unless they would agree not to sell similar goods produced by others. There is strong ground for an argument that, at least as to certain classes of goods, such a kind of competition may be forbidden by statute constitutionally. On the other hand, the right to make proper contracts for the advancement of one's interests is important, and is protected by the Constitution of the Commonwealth and the Constitution of the United States.

This is a highly penal statute, and accordingly it must be construed strictly. It forbids requiring, as a condition of a sale of goods, that the purchaser shall not sell goods manufactured by another. It is intended to make it impossible for a seller to say to an ordinary purchaser who buys to sell again, " You cannot buy my goods except upon condition that you will not sell goods obtained from others. If you sell like goods manufactured by others, you cannot have any of mine." This is very different from saying : " I am ready to sell you my goods freely, and you may sell the goods of others as much as you choose ; but I will make you a reasonable and proper inducement to increase the sale of my goods, by giving you a discount from the regular price, if you will sell mine exclusively." We can conceive of cases in which the former method of dealing would be unfair competition, while the latter would be fair competition.

The language of the statute does not include the latter. It refers to a sale, the condition of which is that there shall be no sale of the goods of others. It refers to dealings which make it impossible for one to buy certain goods to sell again, unless he agrees at the same time to sell these exclusively. Such an absolute agreement on the part of the purchaser is a condition precedent to the consummation of a prohibited sale. There is no prohibition of sales giving full liberty to the purchaser to sell the goods of others, and offering an inducement at the same time, by way of discount from the list price, to sell the seller's goods exclusively.

We are of opinion that the instruction enlarged the application of the statute beyond its true meaning, and was, therefore, erroneous. In order to convict the defendant under this interpretation of the law, the jury were not required to go further than to find that he offered terms somewhat more favorable to

one who would sell his employer's goods exclusively than to one who would give the defendant's employer only a part of his trade. We think that such arrangements are not uncommon, even where there is no thought of obtaining a virtual monopoly.

If the question left to the jury had been whether, under the guise of giving more favorable terms to those who would sell his employer's goods exclusively, the defendant had made the price to those who sold the goods of others so high in comparison with that to those who sold only his employer's goods, as virtually to make it prohibitive of purchases except by those who sold only his employer's goods, the case would be very different. Whether such an arrangement would come within the terms of this criminal statute we do not decide.

The counsel for the defendant and the district attorney have argued with much elaboration and ability the question, whether the statute, under different possible constructions of it, is constitutional. Some of the questions discussed have given rise to much difference of opinion in other courts. In the view that we have taken of the case, we do not find it necessary to consider them.

*Exceptions sustained.*

*J. Parker,* (of New York) (*F. M. Bixby* with him,) for the defendant.

*Asa P. French,* District Attorney, for the Commonwealth.