BUTTERICK PUBLISHING COMPANY *vs.* WILLIAM G. FISHER.

Essex. March 17, 1909. — September 8, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Unfair Competition. Statute,* Construction. *Contract,* Validity. *Sale. Equity Pleading and Practice,* Parties, Appeal. *Evidence,* In writing, Extrinsic affecting writing. *Equity Jurisdiction,* To enforce negative agreement in contract in writing, Specific performance, "He who seeks equity must do equity." *Damages,* In suit in equity.

R. L. c. 56, § 1, making it a criminal offense punishable by fine or imprisonment to impose a condition in the sale of goods " that the purchaser shall not sell or deal in the goods . . . of any other person," being highly penal in its nature, is to be construed strictly and does not prohibit a sale at a reduced rate in consideration of an agreement to sell the vendor's goods alone.

A contract in writing between a corporation, which is engaged in the business of selling patterns for all kinds of garments worn by women and children and in publishing periodicals and catalogues illustrating such patterns, and a dry goods merchant called in the contract a " special agent," provided that the corporation should sell and deliver to the merchant for a stated period patterns at one half the retail price thereof, should allow the merchant twice each year to return, at nine tenths of the sum paid for them and in exchange for new patterns, patterns purchased under the agreement, and should permit $200 of $400 paid by the merchant for patterns " to stand on its books as a ' standing credit ' to bear interest at four per cent per annum payable semiannually . . . and to become due and payable on the termination of this agreement." The merchant agreed to purchase from the corporation and keep on hand at all times during the term of the contract except certain specified months patterns worth $400 at half the retail price, to allow the corporation's agents to examine and take account of his pattern stock, to purchase a specified amount of advertising matter at specified prices and to pay $200 for patterns furnished, to keep the patterns on the ground floor of his store and to cause a lady attendant to give proper attention to their sale, " to conserve the best interest of the agency at all times " and " not to sell or permit to be sold on the premises . . . during the term of this contract any other make of patterns." *Held,* that the contract was not a violation of R. L. c. 56, § 1, making it a criminal offense punishable by fine or imprisonment to impose a condition in the sale of goods " that the purchaser shall not sell or deal

in the goods ... of any other person," following *Commonwealth* v. *Strauss*, 188 Mass. 229.

In a suit in equity to enforce a valid contract in writing, by the provisions of which the defendant agreed not to sell or permit to be sold on his premises during a certain period dress patterns of any other make than the plaintiff's, and to enjoin the defendant from carrying out a contract made by him with a business rival of the plaintiff under which he was selling patterns of the business rival, such business rival is not a necessary party.

Whether specific performance of a contract in writing to provide a certain thing for the plaintiff will be granted in a suit in equity depends upon whether the thing contracted for can be purchased by the plaintiff and whether damages are an adequate compensation for a breach of the contract.

Specific performance of a negative covenant in a contract in writing will not be denied in a case, otherwise a proper one therefor, merely because an affirmative covenant with which the negative covenant is allied is in kind one which a court of equity does not enforce specifically.

In a suit in equity by a corporation, which was engaged in the business of manufacturing and selling patterns for all kinds of garments worn by women and children and in publishing periodicals and catalogues illustrating such patterns, against a merchant who was the proprietor of a dry goods store which was the largest in a certain city, to enforce covenants in a contract between the parties in which the defendant agreed " to conserve the best interests of the agency [established in his store for the sale of the plaintiff's goods] at all times ; [and] not to sell or permit to be sold on the premises . . . during the term of this contract any other make of patterns," it appeared that the method by which the plaintiff was pushing its business was by creating an agency in a store in each of the principal cities and towns for the sale of its patterns, the proprietor of the store, besides agreeing to purchase a certain number of patterns at a price much less than their retail price, also agreeing to buy at a reduced price a certain number of the plaintiff's pamphlets and catalogues, the pamphlets to be resold at a profit and the catalogues to be distributed gratuitously, and that the contract between the plaintiff and the defendant was of this nature ; that it was of advantage to the plaintiff to have its patterns sold in the same store where goods were sold from which women's and children's garments are made ; and that the defendant had broken and intended to continue to break the contract by refusing to sell the plaintiff's goods and by selling those of a business rival of the plaintiff. *Held*, that the covenant was one to provide something which the plaintiff could not purchase elsewhere and that damages were not an adequate compensation for its breach ; and therefore that specific performance of it should be decreed.

The rule, that an agreement in writing cannot be varied or contradicted by oral testimony as to negotiations previous to the making of the contract in writing, is not a mere rule of evidence, but is one of substantive law and rests on the principle that, where the parties deliberately have put their agreement in writing, they shall not be allowed to say that the agreement is different from that which the writing states. For this reason, testimony given at the hearing of a suit in equity, which tended to show an oral agreement which placed upon one of the parties to a contract in writing on the same subject later entered into by them a greater burden than that imposed by the contract, although it was admitted without objection and became a part of the evidence in the case, can have no effect to change the terms of the contract in writing.

At the hearing of a suit in equity for the specific performance of a valid agreement

contained in a contract in writing, that the defendant should not sell other goods than the plaintiff's, it appeared that other terms of the contract, which was made on March 28 of a certain year, were that the plaintiff should furnish to the defendant goods of the specified character and advertising matter relating to them and thus should establish an agency in the defendant's store. It also appeared that the plaintiff desired to have only one agency in any city. Evidence was admitted without objection tending to show that, previous to the making of the contract in writing, the plaintiff had a similar contract with another merchant in the same city, which was terminable at will by the plaintiff by the giving to the merchant of a notice in writing, and that, as part of the negotiations leading up to the contract in writing between them, the plaintiff orally had agreed with the defendant that the defendant should have the exclusive right to sell the plaintiff's goods in the city, but no such agreement appeared in their contract in writing. It also appeared that, at the time of the making of the contract in writing between the plaintiff and the defendant, the defendant was bound by a similar contract with a business rival of the plaintiff, which was terminable only by a three months' notice in writing by the defendant. After the making of the contract in writing between the plaintiff and the defendant, they modified its terms by postponing the date when it should go into operation to June 28 of the same year, and the only evidence as to the reason for the postponement tended to show that it was made in order that thus the defendant might be enabled legally to terminate his contract with the plaintiff's business rival before the contract with the plaintiff went into operation. The judge who heard the case found that the postponement " was in pursuance of and carried out a parol understanding and agreement that the defendant should have an exclusive right of sale and that " the contract between the plaintiff and the other merchant in the city " should be terminated, the earliest date at which the plaintiff could terminate it being June 28." On appeal from a final decree, it was *held*, that the judge's finding of fact was plainly wrong, the fact being that the postponement was made in order to enable the defendant to bring his contract with the plaintiff's business rival to an end before the contract between the plaintiff and the defendant went into effect.

Where, in a suit in equity for the specific performance of a contract in writing, it appears that by the contract the plaintiff, a manufacturer and dealer, agreed to sell patterns and fashion publications to the defendant, a merchant in a city, and the defendant agreed to maintain in his store an " agency " for the plaintiff's goods and not to sell similar goods of any other manufacturer, and it also appears that, in the oral negotiations preceding the making of the contract in writing, it was understood that the defendant's should be the only " agency " of the plaintiff in the specified city, but that such understanding was not incorporated into the contract, the defendant, although the oral understanding was not a part of the contract in writing subsequently made, cannot be required by the plaintiff specifically to perform the contract in writing until the plaintiff terminates a contract of a similar nature existing between himself and another merchant in the city, since he who seeks equity must do equity.

Where, at the hearing of a suit in equity for the specific performance of a valid agreement contained in a contract in writing, that the defendant should not sell goods of a certain character which were not provided by the plaintiff, and for damages for the breach of such agreement, the presiding judge found " it is impossible to determine accurately the amount of that damage in dollars and cents, although I am satisfied that it is more than nominal," and this court after a review of all the evidence finds that, although the plaintiff had suffered

damages, it was not possible to prove and had not been proved what they amounted to in dollars and cents, an appeal from a decree by the judge who heard the case, ordering the defendant to pay the plaintiff $25 as damages, should be sustained.

BILL IN EQUITY, filed in the Superior Court for the county of Essex on August 4, 1908.

The bill alleged that the plaintiff was engaged in the business of manufacturing and selling patterns for all kinds of garments worn by women and children, and in publishing periodicals and catalogues illustrating said patterns and containing pictures, plates, numbers, and general descriptions thereof, all of which had a very large and extensive sale and valuable reputation in the country at large, and had been long on the market in Newburyport and vicinity; that the handling, managing, introduction and sale of said patterns required skill, knowledge of the trade, and especially a leading position in the business of selling the dry goods which were used in the manufacture of garments for which said patterns were made ; that the defendant had long been engaged in the dry goods business in Newburyport, had the largest store and business of the sort in that city, and in his store had long handled patterns for garments and was and long had been especially experienced in, and had special facilities for, the sale of such patterns and the distribution of periodicals and catalogues illustrating and describing the same; that on or about April 5, 1906, the plaintiff and the defendant entered into a contract, the material portions of which were as follows:

The plaintiff agreed " to grant, and does hereby grant, to " the defendant "the right to act as Special Agent for the sale of its patterns in the " defendant's stores ; " to sell and deliver " to the defendant " patterns at fifty per cent of retail prices, and advertising matter at the prices specified "; to allow the defendant " to return twice during each year (in January or February and in July or August), at nine-tenths of the sum paid for them, patterns purchased under this agreement, in exchange for new patterns to be ordered at the time of said return or subsequently, but not in exchange for other goods than patterns; to permit the sum of $200, part of the purchase price of patterns charged to " the defendant by the plaintiff " to stand unpaid on its books as a 'Standing Credit,' to bear interest at four per

cent. per annum, payable semi-annually on January 15 and July 15 of each year, and to become due and payable on the termination of this agreement, either by regular notice or otherwise."

The defendant agreed to purchase from the plaintiff, and to keep on hand for sale at all times during the period this agreement continued in force, except in the months of January, February, July and August of each year, patterns to the amount of $400 at fifty per cent of the retail prices; to allow the plaintiff, or any party delegated by it, to examine and take account of the pattern stock at any time it might desire; to purchase advertising matter from the plaintiff " to a number not less than thirty thousand sheets of Butterick Metropolitan Fashions and one thousand small quarterly catalogues per annum, to be gratuitously distributed "; to pay to the plaintiff, " for patterns to be furnished by it as original stock, the sum of $200, as follows: One Dollar on signing this agreement, the balance, $199, in thirty days after date of shipment of stock; and to pay for goods purchased from " the plaintiff on or before the fifteenth day of the month succeeding the month of purchase; to pay all expenses incurred in the transportation of goods; to keep the patterns on the ground floor of the building; to give or cause to be given by a lady attendant proper attention to the sale of the patterns; to conserve the best interests of the agency at all times; not to sell or permit to be sold on the premises of the party of the second part during the term of this contract any other make of patterns; not to sell Butterick patterns except at label prices; and not to remove the pattern stock from its original location nor to assign it or the agency to any other party or parties, without the written consent of the plaintiff.

The contract was to run for three years, and thereafter was to continue in force until terminated by a three months' notice in writing.

It was further alleged in the bill that the plaintiff had been at all times and then was ready, willing and able to perform all the conditions of said contract on its part to be performed, during the term of said contract, and had made tenders of performance thereof to the defendant; but that the defendant had not

performed any of the conditions of the contract, but, previous to March 28, 1908, had notified the plaintiff that he declined to perform the contract, and had sold and permitted to be sold continuously since March 28, 1908, at his store a make of patterns other than those of the plaintiff, to wit, the McCall patterns manufactured by the McCall Company, a competitor of the plaintiff; had refused to act as agent for the plaintiff and sell its patterns and had sought to prejudice his customers against the Butterick patterns and to advance in all ways the sale of the said McCall patterns; that he intended to continue the sale of the McCall patterns throughout the term of said contract; and that, instead of conserving the best interests of his agency for the plaintiff, he had in all ways conserved the best interests of the plaintiff's business rivals.

The prayers of the bill were that the defendant, his agents and servants, might be enjoined during the term of the contract from advertising, selling or distributing the patterns, fashion sheets, catalogues and other literature or printed matter of the McCall Company, or of any pattern manufacturer other than the plaintiff, and from using his store, business, agents, clerks, apparatus or connections to further or advance the interests of the McCall Company or any other pattern manufacturer than the plaintiff, and from permitting to be sold at his said store during the term of said contract any make of patterns other than those of the plaintiff; and that the plaintiff might be awarded such damages as might be ascertainable.

The defendant demurred upon the ground, among others, that the contract was unlawful because it was contrary to R. L. c. 56, § 1. The demurrer was overruled by *Pierce*, J.; and the defendant appealed.

The case was heard upon the merits by *Bell*, J., and a commissioner was appointed to take the testimony. Among the findings of fact of the trial judge were the following:

" At the time of the making of the written contract it was not agreed that the Pray agency * should be terminated before the defendant should begin performance of his contract, or if there was such an agreement it was not embodied in the con-

---

* The contract with H. W. Pray and Company later referred to.

tract, and being inconsistent with its terms, evidence of it was inadmissible. Subsequent to the making of the contract in question its terms were modified by an oral agreement whereby the time for the beginning of the performance was extended to June 28, 1908. This modification was in pursuance of and carried out a parol understanding and agreement that the defendant should have an exclusive right of sale and that the Pray contract should be terminated, the earliest date at which the plaintiffs could terminate it being June 28.

" The purpose of the plaintiff is to establish but one place of sale for its goods.

" The patterns manufactured by the plaintiff and referred to in the contract in question are duly patented by United States letters patent.

" The· plaintiff has always been, and is now ready, willing and able to perform the written contract as modified by parol. The first step would be the. termination of the Pray contract, and on its termination the performance of the other provisions.

" For several years before and continuously since June 28, 1908, the defendant has sold McCall patterns and intends to continue to do so under a contract which he has made with the McCall Company dated April 2, 1908, and running for three years and until terminated by three months' notice. The McCall Company [and the plaintiff] were rival dealers in paper patterns. The defendant has the largest dry goods store in Newburyport and better facilities than any one else for the sale of the plaintiff's advertising matter and the distribution of its advertising matter. . . .

" The plaintiff company made a contract with H. W. Pray and Company of Newburyport dated September 13, 1905, which was similar in terms to its contract with the defendant. It was terminable by written notice after the expiration of two years. This contract has never been terminated.

" At the time when the written contract between the plaintiff and the defendant was executed, it was stated by the plaintiff's agent that the defendant was to be the exclusive agent of the plaintiff in Newburyport and both parties so understood it, then and at the time when the contract was modified by parol. The plaintiff intended to give the notice to terminate the Pray

contract. It did not do so, because the defendant was refusing to carry out the contract. The defendant absolutely refused to carry out its contract with the plaintiff before the time for performance arrived. The defendant has proved nothing which excuses him in repudiating the contract.

"The only injury to the plaintiff caused by the defendant's refusal to perform the contract is the larger sales which might be made by the defendant over those made by Pray and Company, and the less sales which might be made by the McCall Company if compelled to sell through a smaller dealer. It is impossible to determine accurately the amount of that damage in dollars and cents, although I am satisfied that it is more than nominal."

The trial judge ruled "that under the contract the patterns were sold by the plaintiff to the defendant and that the defendant sold them as his own goods to his customers and that in such sales, he did not act as agent.

"I understand that the question of the validity of the contract was raised and determined on the demurrer and that that determination is the law of the case for me.

"The refusal of the defendant to carry out his contract excused the plaintiff from taking any steps to terminate the Pray contract while such refusal was persisted in."

He refused to rule that the plaintiff was not entitled to any equitable relief, or that it was entitled only to nominal damages, and ordered a final decree, which was entered, "that the plaintiff's damages to the date of the filing of the bill be assessed in the sum of $25, that the defendant pay the plaintiff the said sum together with the costs of this suit amounting to $50.38; that the plaintiff have an execution against the defendant accordingly; and that the plaintiff have no other relief in this suit." Both the plaintiff and the defendant appealed from the decree.

*R. G. Dodge,* (*J. B. Sheehan* of New York with him,) for the plaintiff.

*W. F. White,* for the defendant.

LORING, J.     1. We are of opinion that the contract sued on is not within R. L. c. 56, § 1. It was held by this court in *Commonwealth* v. *Strauss,* 188 Mass. 229, that that statute, being a

highly penal one, is to be construed strictly, and that so construed it does not prohibit a sale at a reduced rate in consideration of an agreement to sell the vendor's goods alone. It is not necessary, therefore, to consider whether the defendant was the plaintiff's agent as matter of law and so within the exceptions stated at the end of the section.

2. The defendant's objection that no decree can be had in the absence of the McCall Company is not well taken. No relief is sought against that company. It is usual to join such a person as a proper party defendant; and in *Strobridge Lithographing Co.* v. *Crane*, 12 N. Y. Supp. 834, it was held that under a statute giving a proper party defendant a right to intervene it was error to refuse to admit a person standing in the position of the McCall Company on his making application therefor. We know of no case or principle which makes the McCall Company a necessary party defendant.

3. The next question is whether the plaintiff was entitled to have the defendant enjoined from violating his negative agreement "not to sell or permit to be sold on the premises of the party of the second part during the term of this contract any other make of patterns."

It may be taken to be settled in this Commonwealth that the question whether a contract will or will not be specifically enforced depends upon the question whether the thing contracted for can be purchased by the plaintiff, and whether damages are an adequate compensation for a breach. See *Clark* v. *Flint*, 22 Pick. 231 ; *Gloucester Isinglass & Glue Co.* v. *Russia Cement Co.* 154 Mass. 92; *New England Trust Co.* v. *Abbott*, 162 Mass. 148; *Howe* v. *Watson*, 179 Mass. 30 ; *Beekman* v. *Marsters*, 195 Mass. 205.

It may also be taken to be settled, following the decision in *Lumley* v. *Wagner*, 1 DeG., M. & G. 604, that the specific performance of a negative covenant will not be denied in a proper case because an affirmative covenant with which the negative covenant is allied is in kind one which a court of equity does not specifically enforce. See *Peabody* v. *Norfolk*, 98 Mass. 452 ; *Ropes* v. *Upton*, 125 Mass. 258 ; *Anchor Electric Co.* v. *Hawkes*, 171 Mass. 101 ; *United Shoe Machinery Co.* v. *Kimball*, 193 Mass. 351. See also *Rice* v. *D'Arville*, 162 Mass. 559.

The defendant's covenant not to sell or permit to be sold on his premises any other make of patterns is a covenant where the thing contracted for cannot be purchased by the plaintiff, and where damages are not an adequate compensation.   The plaintiff's business consists in making and selling patterns for women's and children's garments.   For the purpose of pushing its business it creates an agency in each of the principal cities and towns for the sale of its patterns.   The agent also agrees to buy a certain number of its pamphlets and catalogues, the pamphlets to be resold at a profit and the catalogues to be distributed gratuitously.   For example, in the contract made between the plaintiff and the defendant the plaintiff agreed to sell to the defendant its patterns at fifty per cent of the retail price, and the defendant agreed to keep on hand for sale (with the exception of four months there named) patterns to the amount of $400.   The plaintiff agreed to sell to the defendant its pamphlets, called Butterick Metropolitan Fashions, at seven and one-half cents apiece, the retail price being ten cents, and the defendant agreed to buy thirty thousand sheets of said Fashions.   The defendant also agreed to buy one thousand catalogues for $20 a thousand, to be distributed gratuitously.   The defendant further agreed to keep the patterns on the ground floor of the store and to give through a "lady attendant" proper attention to the sale of them.

It appeared in evidence that the defendant's store was easily the largest dry goods store in Newburyport, and that it is of advantage to have such patterns sold in the same store where goods are sold for making women's and children's garments.

It is manifest that the plaintiff cannot get the same return from a smaller store, and that its loss from the defendant's breach of his contract cannot be measured or made good by giving it damages.

The case is within the decided cases.   An injunction was issued in a similar case by the Supreme Court of New York, and that decision was affirmed by the Court of Appeals.   *Standard Fashion Co.* v. *Siegel-Cooper Co.* 30 App. Div. (N. Y.) 564; *S. C.* on appeal, 157 N. Y. 60.   Moreover, this court in *Butterick Publishing Co.* v. *Boynton,* 191 Mass. 175, where there was no negative covenant, said that if there had been one an injunc-

tion would have issued. In *Catt* v. *Tourle*, L. R. 4 Ch. 654, violation of a covenant not to buy beer for sale from anybody but the plaintiff was enjoined. The covenant there was in a lease, but that was held to be immaterial in the original case of *Lumley* v. *Wagner*, 1 DeG., M. & G. 604. See pp. 617, 618. The same point was decided in *Metropolitan Electric Supply Co.* v. *Ginder*, [1901] 2 Ch. 799. The negative covenant which was enjoined in that case was a covenant not to take electricity from anybody but the defendant and was not contained in a lease. For other cases see *Western Union Telegraph Co.* v. *Rogers*, 15 Stew. 311; *Myers* v. *Steel Machine Co.* 1 Robbins, 300; *S. C.* on appeal, 2 Robbins, 795; *Jones* v. *Williams*, 139 Mo. 1; *Ferris* v. *American Brewing Co.* 155 Ind. 539; *Southern Fire Brick & Clay Co.* v. *Garden City Sand Co.* 223 Ill. 616; *Feigenspan* v. *Nizolek*, 1 Buch. 382. For a collection of cases see Joyce on Injunctions, §§ 451–457.

4. The defendant has contended that in the case at bar, the plaintiff is not now and never has been in a position to ask for specific performance of the contract between them. He bases this contention on the finding of the judge who heard the case that " subsequent to the making of the contract in question its terms were modified by an oral agreement whereby the time for the beginning of the performance was extended to June 28, 1908. This modification was in pursuance of and carried out a parol understanding and agreement that the defendant should have an exclusive right of sale and that the Pray contract should be terminated, the earliest date at which the plaintiff could terminate it being June 28th."

But we are of opinion that this finding was plainly wrong.

During the negotiations which led up to the written contract here in question, it was stated by the plaintiff company that it was its policy to have but one " agency " in Newburyport and that it intended to bring its agency with H. W. Pray and Company to an end (as it had a right to do under its contract with them) at the same time that its contract with the defendant went into effect. But the plaintiff came under no obligation to the defendant to that effect in the original contract, as was found in terms by the judge who heard the case. The ruling that parol evidence is not admissible to contradict a written contract usually

is spoken of as a rule of evidence. It is a rule of evidence, but it is a rule of evidence founded on the substantive rights of the parties, namely, that, where the trade finally struck between the parties is put in writing, the writing sets forth the trade which is struck. For that reason evidence that during the negotiations the plaintiff agreed by word of mouth that the defendant should be its sole " agent," although not objected to, is not of consequence. *Mears* v. *Smith*, 199 Mass. 319. See also in this connection *Farquhar* v. *Farquhar*, 194 Mass. 400, 404, 405.

The change subsequently made by which the contract between the plaintiff and the defendant was to go into effect on June 28, 1908, in place of March 28, 1908, was made to enable the defendant to bring his contract with the McCall Company to an end before or at the time that his contract with the plaintiff went into operation and not as part of a subsequent agreement that the defendant was to be the sole " agent," as found by the judge. To bring the contract with the McCall Company to an end, the defendant had to give three months' notice ; and after the contract here in question had been made it was discovered that notice could not be given before March 28, 1908. This fact was not discovered when the written contract was made, but was discovered later on. One of the plaintiff's witnesses (Marsh by name) testified that March 28, 1908, was originally fixed upon as the date when the contract here in question was to go into operation, because the plaintiff did not wish to put its patterns into the defendant's store until the defendant's contract with the McCall Company had expired ; and the date was changed from March 28, 1908, to June 28, 1908, when it was discovered that that was the earliest date on which the defendant could terminate his contract with the McCall Company. The defendant, when on the stand, also testified to the same thing and fixed February as the time when this subsequent agreement changing the date was made. That was all the testimony there was in the case as to the change from March 28, 1908, to June 28, 1908.

The plaintiff throughout intended to have but one " agency " in Newburyport. But at no time did it come under an obligation to the defendant to that effect. We are therefore of opinion that the fact that the plaintiff never has brought its

agency with H. W. Pray and Company to an end does not prevent it from asking for specific performance.

But we are also of opinion that, since the plaintiff stated that it intended to have but one "agency" in Newburyport, the defendant should not be required specifically to perform the contract until after H. W. Pray and Company have ceased to be the plaintiff's agent. He who seeks equity must do equity.

5. The plaintiff has asked for such damages as have accrued in addition to the injunction, as was done in *Foss* v. *Roby,* 195 Mass. 292. We think that doubtless it has suffered damages, but we think also that it is not possible to prove, and that the plaintiff has not proved, what they amount to in dollars and cents.

The decree of the Superior Court must be reversed and a decree entered enjoining the defendant from selling or permitting to be sold on his premises, during the term of the contract, any make of patterns other than those of the plaintiff, from and after the time when its contract with H. W. Pray and Company shall have come to an end.

*So ordered.*