### STANDARD FASHION CO. v. MAGRANE HOUSTON CO.

(Circuit Court of Appeals, First Circuit. June 28, 1918.)

#### No. 1343.

1. INJUNCTION ⊂⇒58—NEGATIVE COVENANTS—ENFORCEABILITY.

Merchant's covenant not to sell or permit to be sold on its premises during contract term any other patterns, and not to sell specified patterns except at label prices, being auxiliary to performance of agreements which could not be specifically enforced, could not be enforced by injunction until such relief was shown to be clearly necessary to prevent substantial injustice, in absence of adequate remedy at law.

2. INJUNCTION ⊂⇒58—NEGATIVE COVENANTS—ENFORCEABILITY.

Merchant's contract containing negative covenant, not to sell on his premises during the term of the contract any other make of patterns than plaintiff's *held* not so clear as to permit of enforcement by injunction; the term being indefinite.

Appeal from the District Court of the United States for the District of Massachusetts; Chas. F. Johnson, Judge.

Suit for injunction by the Standard Fashion Company against the Magrane Houston Company. Decree for defendant, and plaintiff appeals. Affirmed, reserving to plaintiff the right to make application to the District Court under equity rule 22 (198 Fed. xxiv, 115 C. C. A. xxiv), to transfer its suit to the law side.

Robert G. Dodge, of Boston, Mass. (Herbert Noble and James B. Sheehan, both of New York, on the brief), for appellant.

James W. Sullivan, of Lynn, Mass., for appellee.

Before DODGE and BINGHAM, Circuit Judges, and BROWN, District Judge.

PER CURIAM. The plaintiff fails to satisfy us that the negative covenant in its contract with the defendant is one which the court should enforce by injunction, even if it is not in violation of Clayton Act Oct. 15, 1914, c. 323, 38 Stat. 730. We do not think it sufficiently proved that the plaintiff will sustain any substantial injury from the

breach of that covenant beyond that for which it can recover damages in a suit at law.

[1] While the covenant forbids the defendant "to sell or permit to be sold" on its premises patterns other than the plaintiff's, it does not prevent defendant from selling elsewhere, and the plaintiff is left free to establish other agencies for their sale, wherever it may be able to do so, and it had in fact, while the contract was in force, established another agency with a concern larger than the defendant, doing business in the defendant's immediate vicinity. That the loss of the defendant's agency during the unexpired term of the contract damages the plaintiff, under these circumstances, to an amount not calculable in money, we are not prepared to believe upon the testimony of the plaintiff's president, which is all that is offered to support the claim.

The circumstances under which like negative covenants were enforced by injunction in Butterick, etc., Co. v. Fisher, 203 Mass. 122, 89 N. E. 189, 133 Am. St. Rep. 283, or in those cases in other state courts upon which the plaintiff relies, were, in this and other material respects, different from those presented in this case. The decisions referred to are not in any event binding upon us. The negative covenant here in question, being in its nature auxiliary to the performance of agreements which we cannot order specifically performed, is therefore not to be enforced by injunction, unless such relief is shown clearly necessary to prevent substantial injustice, in the absence of any adequate remedy at law.

In Javierre v. Central Altagracia, 217 U. S. 502, 508, 30 Sup. Ct. 598, 600 (54 L. Ed. 859) the issue of an injunction to enforce a negative covenant of this character was disapproved. It was said that:

"There is a certain anomaly in granting the halfway relief of an injunction" against the breach of such a covenant "when the court is not prepared to enforce the performance to accomplish which indirectly is the only object of the negative decree."

In Dalzell v. Dueber Mfg. Co., 149 U. S. 315, 13 Sup. Ct. 886, 37 L. Ed. 749, the court said, applying the language of Colson v. Thompson, 2 Wheat. 336, 341 (4 L. Ed. 253):

"The contract which is sought to be specifically executed ought not only to be proved, but the terms of it should be so precise as that neither party could reasonably misunderstand them. If the contract be vague or uncertain, or the evidence to establish it be insufficient, a court of equity will not exercise its extraordinary jurisdiction to enforce it, but will leave the party to his legal remedy."

[2] We do not think it can be said that the contract here in question is so clear in its terms that neither party could reasonably misunderstand them. The negative covenant is as follows:

"Second party also agrees * * * not to sell or permit to be sold on the premises of second party, during the term of this contract, any other make of patterns and not to sell Standard patterns, except at label prices."

It is necessary to determine the meaning of the phrase "the term of this contract." The defined term is "a term of two years from date hereof," November 25, 1914. The following words: "From term to term thereafter until this agreement is terminated as hereinafter pro-

vided"—do not explicitly define the duration of any term. The negative covenant may well be limited to the defined term of 2 years. Upon the plaintiff's construction we should be obliged to enlarge the language of the covenant and to read it, "during the continuance of this contract," thereby including any subsequent or additional terms which might result from any failure to give notice of a desire to terminate. We do not find a clear intention of the defendant to be bound by the negative covenant for an indefinite period, or for further terms each of 2 years and 3 months. That the defendant was willing to restrict the use of its premises during a defined term of 2 years, or of 2 years and 3 months, does not indicate a willingness to be restricted indefinitely, or throughout any future period of contract relations. We see no reason why the contract relations might not well continue between the parties after the restriction upon defendant's use of its premises had ceased at the end of 2 years. It is in evidence that there are many contracts of this character which are in successful operation without the aid of a negative covenant like this.

Furthermore, we think the terms of the contract relating to notice of desire to terminate are not so precise that neither party could misunderstand them. They provide for notice within 30 days "after the expiration of any contract period." The meaning of the words "any contract period" is not clear. The plaintiff contends that it is a term of 2 years from date, but owing to the peculiarity of the provision that notice of a desire to terminate must be given within 30 days after the expiration of any contract period, it results that the minimum period for which the parties were bound upon execution of the contract is a period of 2 years and at least 3 months and 1 day, not a period of 2 years, which is the ostensible "term" of the contract.

Ordinarily a provision for notice of termination is required to be given within the defined contract period, and is not employed for the purpose of extending the original period of obligation. The present contract is unusual in this respect. As a result, the words "any contract period" may refer either to the defined term of 2 years, or to the additional period of not less than 3 months and 1 day, or to the combined periods of 2 years and 3 months and 1 day.

Within 30 days after the expiration of this combined period of 2 years and 3 months, the defendant, by its letter of March 21, 1917, though somewhat informally, gave notice of its desire to terminate. The letter, it is true, stated a preference to discontinue in less than 3 months. Nevertheless it requested discontinuance at the earliest possible date, which fairly means at least at the end of the period of 3 months to which the letter refers. The plaintiff's letter in reply expressly refused to recognize, but, on the contrary, denied, the defendant's right to terminate at 3 months' notice, and asserted that the defendant was under engagement for the next 2 years. It thus appears that, whatever be the true construction of this unusual and somewhat complicated contract, its terms are not so precise that neither party could reasonably misunderstand them.

Upon the question of the application of the Clayton Act we express no opinion.

We affirm the judgment of the District Court, not for the reasons assigned in its opinion, but on the ground that the negative covenant, if valid, and not prohibited by the Clayton Act, does not justify the interposition of the extraordinary powers of a court of equity to grant the special relief sought.

The decree of the District Court is affirmed, reserving the right of the appellant to make application to that court under equity rule 22 (198 Fed. xxiv, 115 C. C. A. xxiv) to transfer its suit to the law side of that court, and the appellee recovers costs in this court.