(December 23, 1897.)

## FIRST NATIONAL BANK OF HAILEY v. BEWS.

[51 Pac. 777.]

PROMISSORY NOTE—MORTGAGE—PAROL EVIDENCE TO VARY TERMS OF CONTRACT.—Certain parties holding a mortgage upon property upon which there existed prior mortgages, entered into agreement with the mortgagors, which agreement was evidenced by two instruments in writing, one signed by the mortgagors, and the other by the mortgagees, bearing even date, that signed by the mortgagors containing a provision that said mortgagors did thereby turn over to the mortgagees the possession of the mortgaged premises upon the condition that said mortgagees should "apply all rents and profits in leasing or using it on actual expenses, taxes, insurance and interest and principal of their mortgage note," there being at the time some $8,000 of insurance on the property for the benefit of prior mortgagees. No mention of insurance was made in the instrument signed by the mortgagees. *Held*, that the statement in the instrument signed by the mortgagors was insufficient to charge the said mortgagees with a duty to keep said property insured for the sum of $25,000, their mortgage being for the sum of $10,000, and, further, *held*, that parol evidence was not permissible to establish such contract.

(Syllabus by the court.)

APPEAL from District Court, Blaine County.

A. F. Montandon and Brown & Henderson, for Appellant.

Where an instrument does not express the entire agreement, and does not appear to do it, parol evidence is competent to show the omitted part, whether contemporaneous or antecedent, if it does not conflict with the instrument. (Browne

on Parol Evidence, sec. 50, p. 125, and authorities cited; Green-leaf on Evidence, sec. 282, n. 2; Wharton on Evidence, secs. 926, 942, 944, 946, 947, 956, 961, 971; Rice on Evidence, 219, 262, 264, 275, 318, 320; *Auezrais v. Nagles,* 74 Cal. 60, 15 Pac. 371; *Toomy v. Dunphy,* 86 Cal. 639, 25 Pac. 130.)   Where a contract is partly in writing and partly by verbal agreement, parol evidence is admissible to show the portion of the contract not reduced to writing.   (*Peterson v. Chicago etc. R. R. Co.,* 80 Iowa, 92, 45 N. W. 573.)   At bar the written contract provided for insurance, but omitted to state to what amount—a clear omission—and parol evidence to explain and supply the omission was admissible, not to vary, contradict, add to or take off, but to make it intelligible, and carry it into effect as made by the parties.

R. F. Buller and Texas Angel, for Respondent.

In considering the question as to the supposed liability of the plaintiff under the alleged contract to insure, it must not be forgotten that, as a matter of fact, the plaintiff never made any contract at all, and was not even in existence at the time when the contract to turn over the rents and profits of the hotel to McCornick & Co., and Willman & Walker, was made.   There is no date to the paper introduced by defendant Young as a copy of the agreement, but he testified that it was made sometime in May, 1888.   It is the established law that an indorsement in full of a promissory note implies certain contract liabilities and no others, unless expressed therein, and that it cannot be varied by parol evidence.   (Daniel on Negotiable Instruments, 3d ed., sec. 719, and cases cited; *Doolittle v. Ferry,* 20 Kan. 230, 27 Am. Rep. 166, and cases cited; (Brewer, J.).) The cashier has no power to contract for the bank.   (Story on Agency, sec. 115.)   Neither the president nor cashier have power to bind the bank, except in the discharge of their ordinary duties.   (*United States Bank v. Dunn,* 6 Pet. 57; *United States v. Bank of Columbia,* 21 How. 356; *Jenkins v. National Village Bank,* 58 Me. 275, 278.)   The defendant can get no help from the doctrine of ratification, for where a party claims ratification of an unauthorized contract of an officer he must show that the directors, or a majority of them,

actually knew of the contract and its terms, and with such knowledge acquiesced in it. There is no such evidence in this case. (4 Ency. of Law, 247, note 1; *Murray v. Lumber Co.,* 143 Mass. 250, 9 N. E. 634.)

HUSTON, J.—This is an action brought by the plaintiff against defendants upon a promissory note, a copy of which is set forth in the complaint, and is in the words and figures following:

"$5,000.00.           Hailey, Idaho, 29th August, 1887.

"One day after date, without grace, for value received, we jointly and severally promise to pay to the order of McCornick & Co., five thousand dollars, negotiable and payable at the house of McCornick & Co., Hailey, Idaho, without defalcation or discount, and interest at the rate of one and one-half per cent per month from date until paid, both before and after judgment.

(Signed)     "H. BEWS.

"KATE BEWS.

"O. R. YOUNG.

"J. W. HODGMAN."

The facts, as they appear from the record, are substantially as follows: In the year 1887, the defendants were engaged in the erection of an hotel in the town of Hailey, in (then) Alturas county. In the progress of the erection of said hotel, the defendants found it necessary to borrow a certain sum of money, and, to effectuate that purpose, they executed to the payee therein named the promissory note above set forth, and also at the same time executed and delivered to Willman & Walker a note for $5,000, and gave a joint mortgage to said McCornick & Co. and to Willman & Walker, to secure the payment of said notes and interest, which mortgage was subject to a certain other prior mortgage upon the same premises. Some time in May, 1888 (the exact date does not appear), the possession of the said hotel property was turned over to the said McCornick & Co. and said Willman & Walker,

and the following paper writing was delivered by the mortgagors to them, to wit:

"We hereby turn over to Willman & Walker and M. McCornick & Co. the property known as the 'Merchants' Hotel,' and the personal property therein, subject to the right of the parties therein interested, on lots 19 and 20, block 40, Hailey, Idaho; they to apply all rents and profits in leasing or using it on actual expenses, taxes, insurance, and interest and principal of their mortgage note.

(Signed)        "KATE BEWS.

"J. W. HODGMAN.

"O. R. YOUNG.

"BEWS, HODGMAN & YOUNG."

It seems that at the same time of the execution and delivery of the foregoing instrument, another, of which the following is a copy, was executed and delivered by the mortgagees to the mortgagors, viz.:

"Whereas, Henry Bews, Kate Bews, J. W. Hodgman, and O. R. Young, have this day, by instrument in writing, turned over to Willman & Walker and McCornick & Co., the premises known as the 'Merchants' Hotel,' situated at northeast corner of Maine and Bullion streets, Hailey, Idaho, being lots 19 and 20, of block 40, of Hailey, aforesaid, as further security, etc.: Now, therefore, said Willman & Walker and said McCornick & Co., for themselves, their heirs and assigns, covenant and agree to rent said premises to the best advantage in their power, to use diligence and care in keeping the premises neat, clean, and in good repair, and at any time, on payment of the amounts due them by the said Bews, Hodgman & Young, or either of them, to surrender and deliver up the possession of said premises, subject to any lease or leases in existence from them thereon at the time; or in case of any mortgage or other title, prior to the rights of said Willman & Walker, McCornick & Co., intervene and mature and ripen into title, then the said McCornick & Co. and Willman & Walker shall, on payment of the same due them, execute a quitclaim deed thereof to the person or persons paying them. Nothing in this contract shall prohibit said Willman & Walker and said McCornick & Co. from

foreclosure of their mortgage, nor from purchasing said premises on any foreclosure or execution sale thereof.

(Signed)          "WILLMAN & WALKER.

"ALEX. WILLMAN.

"McCORNICK & CO.

"By J. M. BURKETT,

"Cashier.

"A. L. WALKER.

"May 10, 1888."

At the same time, certain leases of portions of the property transferred were assigned by the mortgagors to the mortgagees. The mortgagees assumed possession of the premises under the foregoing agreements, and, as would appear, controlled the property thereafter, collecting rents, etc., up to the time the property was destroyed by fire, on July 2, 1889. At the time of the transfer, it appears certain portions of the said property were under lease, which leases, as before stated, were assigned to the mortgagees, and upon which it is claimed by defendants that said mortgagees and their successor in interest (the plaintiff) collected rents to the amount of some $2,100. It should be stated, for a better understanding of the situation, that some time in May, 1887, in contemplation of the organization of the plaintiff corporation, certain negotiations were entered into between the said McCornick & Co. and the parties engaged in the promotion of the organization of plaintiff, which negotiations culminated in the acquiring by the plaintiff, on or about May 1, 1887, of the business and assets of said McCornick & Co. The plaintiff thereby became the owner of the note in action, and of the security therefor to the extent of said note.

It is claimed by defendant that at the time the instruments hereinbefore set forth were executed and delivered, and the possession of the property turned over to the aforesaid mortgagees, said mortgagees agreed to keep said property insured for the sum of $25,000, for the protection of themselves and the mortgagors. This claim is set up in both the answer and cross-complaint of the answering defendant. Upon the trial defendant offered to prove by the answering defendant that, at the time and preceding the time the said contracts or agree-

ments referred to were made, it was agreed by the said mort-
gagees, through their agent or representative, Burkett, that
they would insure said property for a sum not less than $25,000.
The refusal of the court to permit the introduction of this
testimony is alleged as error. We cannot agree with this con-
tention of appellant. We find nothing in the facts in this case,
as shown by the record, to support the contention. There is
nothing in either of the agreements upon which such a contract
can be predicated. The word "insurance" only appears once
in the agreements, and that is in the instrument by the mort-
gagors. If there had ever been any intention on the part of
the mortgagees to incur such an obligation, it is probable that
it would not have been left out, and not the slightest allusion
made to it in the agreement signed by them. Counsel state in
their brief that "the written contract provided for insurance,
but omitted to state to what amount—a clear omission." We
have set forth above the two instruments constituting the con-
tract. The statement in the counsel's brief needs no other
comment. If a contract imposing a liability of $25,000 can be
predicated upon such shadowy grounds, we must abjure the
whole law pertaining to the alteration or extension of written
contracts by parol. Denuded of all extraneous matter, disencum-
bered of the voluminous dissertations of counsel and the mul-
titudinous quotations of authorities, none of which, so far as
we are able to divine, have any applicability to, or are in any
way instructive to the court in arriving at, a just conclusion
under the law, the proposition of the appellant is simply this:
Can the written instruments referred to be enlarged, by parol,
so as to impose upon the parties thereto, or either of them,
obligations not expressed in or that can be assumed to have
been contemplated by them. There is no question as to the
execution of the note sued upon, nor is there any question as to
the subsequent action and agreement of the parties. The sim-
ple question submitted to the court upon this proposition is
this: Can said agreements, taken together and in the light of
the facts shown by the record, be so construed as to uphold a
contract by the plaintiff to insure the property involved for the
sum of $25,000? It is not claimed by the appellants that such
a conclusion can be reached or justified from the writings them-

selves. Is it competent, then, for the appellants to establish such an agreement by parol evidence?

We believe it a recognized principle of the law of contracts that where parties have been engaged in negotiations involving contractual relations, and have finally reduced the result of such negotiations to writing, and executed the same, such written evidence of the conclusion of the parties is final, and may not be changed or extended to the extent of imposing upon either party obligations not expressed in the written contract or agreement. It may be conceded that when the plaintiff accepted the note in question, and the security, it assumed all the obligations imposed thereby upon its assignors; but such obligations cannot be extended beyond the clear intent of the written agreements. Learned and ingenious as counsel's arguments, both oral and in his brief, are confessed to be, we are unable to find in either any support for this contention. The decision of this court in the case of *First Nat. Bank v. Bews,* 3 Idaho, 486, 31 Pac. 816, does not affect any of the questions now before us. In the view we take of this case, it is unnecessary for us to enter upon a discussion of many of the questions raised by counsel in their briefs and arguments.

It is claimed by appellants that under the agreements of May 10, 1887, plaintiff is required to account to defendants for the rents, issues, and profits derived from the transferred property during its existence, or during the time it was under the control of plaintiff. The district court so instructs the jury, and we think the jury so found. The evidence shows, as appears by the record, that Burkett, who, it seems, acted as the agent of both the plaintiff and the other mortgages. Willman & Walker, collected for rents the sum of $2,150. One-half of this sum, less expenses, etc., was due to plaintiff, and one-half to the other mortgagees, Willman & Walker. The note sued upon, as shown by the evidence, amounted at the time of the trial to $12,325. One-half of the gross sum collected by Burkett was $1,075, which deducted from the amount due upon the note would leave $11,250. The verdict was for $11,100. As to the amount due to Willman & Walker, they must look to their authorized agent for that. It is not a matter properly

involved in this action. No question of taxes or their payment or nonpayment is raised by the pleadings.

We might, had we been inclined to avail ourselves of technicalities, have relieved ourselves of much labor in this case, by relying upon the fact that the record does not disclose that any exception was taken by appellant to the ruling of the court in excluding the testimony of O. R. Young, in relation to the contract for insurance. This appears in the appellants' specification of errors—that is, the ruling of the court is therein alleged as error; but this is not sufficient to satisfy the requirements of the statute. The exception to the ruling of the court must be taken at the time the ruling is made, although the bill of exceptions may be settled afterward.

We have carefully considered and passed upon all the questions which we believe to be involved in a decision of this case upon its merits. We have not, it is true, analyzed and discussed many of the arguments and authorities presented in the somewhat lengthy arguments, both oral and written, presented by counsel upon both sides; not because we did not appreciate, in its fullest measure, the erudition, ingenuity, and ability thereon displayed, but simply because we did not deem it essential in reaching a conclusion, the single purpose of which should be the "promotion of justice." Our life will be "a waste of wearisome hours" if courts are to become mere curriculum for the exhibition of legal and intellectual acrobatics, wherein judges sit merely as referees.

Sullivan, C. J., and Quarles, J., concur.