[L. A. No. 3689.   Department Two.—October 18, 1916.]

# COUNTY OF SAN DIEGO, Appellant, v. LEWIS J. UTT and UTT INVESTMENT COMPANY (a Corporation), Respondents.

County—Contract for Acquisition of Land for Highway—Fraud—Pleading.—A contract made by a county, in pursuance of the Public Highway Act of 1907 (Stats. 1907, p. 666), under which it acquired land for a public highway, and which contract had been approved by the highway commissioners and by the board of supervisors, cannot be avoided by the county upon mere averments to the effect that the assistant district attorney, the legal adviser of the highway commission, was interested as a stockholder in a corporation whose land was acquired, that an excessive consideration was paid therefor, that such county officials were ignorant of that fact, and that the county was induced to pay the consideration through the fraud of the assistant district attorney.

APPEAL from a judgment of the Superior Court of San Diego County.   W. R. Guy, Judge.

The facts are stated in the opinion of the court.

H. S. Utley, District Attorney, James O'Keefe, and E. L. Davin, for Appellant.

Lewis J. Utt, for Respondents.

HENSHAW, J.—The complaint herein sought to charge a breach of trust upon the part of the defendant Utt, resulting in injury to the plaintiff and in advantage to defendant Utt, as a stockholder in the Utt Investment Company, defendant. The breach of trust charged was the asserted fraudulent efforts of defendant Utt, resulting in success, whereby the plaintiff was induced to enter into a contract with the Utt Investment Company, by which the defendant investment company conveyed to the county a certain strip of land as and for a main highway, which land it is asserted was worth but $260. In return for this the plaintiff agreed to fence and did fence the line of this highway at an expense of one thousand dollars. A decree was sought, declaring the contract to be void *ab initio* and awarding the plaintiff a

large sum as damages. A motion to strike out certain paragraphs of the complaint was made and granted. Thereafter a general demurrer to the complaint was sustained, and plaintiff, refusing to amend, has appealed from the judgment which followed.

It first complains of the court's ruling in striking out portions of the complaint. This consideration may be addressed to the complaint as it originally stood, for if the original complaint did not state a cause of action, the court's ruling in striking out portions of it need not be reviewed.

The essential allegations are that the defendant, Utt Investment Company, a corporation, owned a ranch known as Agua Tibia Ranch, situated some seventy miles from the city of San Diego. The capital stock of the corporation "was distributed amongst the said defendant, Lewis J. Utt, and his relatives, and is still held by them." Defendant Utt, at all the times mentioned, was the duly appointed, qualified, and acting assistant district attorney of the county of San Diego. As such officer he occupied a position of trust and confidence in his dealings with the county. Amongst his duties was to represent the interests of the county "in all matters pertaining to the county in all easements or rights of way for the construction of highways . . . and in all contracts had between individuals and corporations dealing with or conveying to the said county of San Diego, easements over their lands, for the construction of said public highways."

The county of San Diego had voted bonds in the sum of one million two hundred and fifty thousand dollars, for the construction of public highways in the county, "according to the report of the Highway Commissioners appointed by the Board of Supervisors of the County of San Diego to lay out main public highways in the said county." As a part of this system there was projected "a main public highway running through the said ranch and over and along the old road theretofore and for many years prior thereto used as a public highway." "At the instance and request of Utt the route prescribed in the report to the Highway Commissioners was changed and altered so that the same, instead of running about a mile and a half or two miles south of the house of said defendants on the Agua Tibia Ranch, was moved to within a distance of approximately a quarter of a mile of said house, which change necessitated the building and con-

struction of about four miles more road than would have been necessary had the preliminary route selected and designated by the highway commissioners been followed. That in the building and construction of the new route so changed at the instance and request of the said defendant, Lewis J. Utt, as aforesaid, it was necessary to build and construct certain bridges at a cost to the County of San Diego, of the sum of $2000, or thereabouts, which bridges would have been unnecessary, had the said old line been followed, as was intended by the highway commissioners, appointed to lay out the route of roads, to be built and constructed pursuant to the provisions of the statute, under which said bonds were voted, and which bridges so constructed were of great use and benefit to the said defendant and improved and benefited lands of said defendants, and rendered the same more valuable. That the said highway commissioners intended to improve the old road so running through the said Agua Tibia Ranch, as a part of the main public highways, to be constructed under the said bond election and not to lay out or build a new road through the said Agua Tibia Ranch, and not acquire any new right of way through said ranch of defendant.'' While defendant Utt was acting in his official capacity as assistant district attorney of the county, and while he was acting as counsel for and representing the interests of the county ''in the matter of any change of routes, of highways, to be built pursuant to said bond election, and while the said defendant, Lewis J. Utt, was a member of and acting as counsel and agent for the said Utt Investment Co., he, the said defendant, Lewis J. Utt, prepared a contract and procured the same to be executed, to which contract the said County of San Diego, and the Utt Investment Company were parties, whereby it was agreed and provided that the new public highway,'' should be built along the new route. The Utt Investment Company agreed to convey to the county of San Diego the necessary land for a right of way. It did so, and conveyed 13.2 acres of land, of the value of two hundred and sixty dollars and no more. The contract further provided that the county should build a hog-wire fence, two cattle-passes and one hog-way for the transportation of stock on the lands of the Utt Investment Company, across the highway. The county did this, at an actual cost of one thousand dollars and ''by reason of the change of said route the cost of the

new bridges rendered necessary thereby, was the sum of $2,000, or thereabouts.'' That at the time of the execution of this agreement, the cost and value of the improvements agreed to be erected by the county ''were not known to the said county of San Diego, nor to the Board of Supervisors thereof, nor to any officer or person authorized to represent the said county of San Diego other than the said defendant, said Lewis J. Utt,'' and the same allegation is made touching the cost of the construction of the bridges. ''That the said County of San Diego, at the time of the making of said contract herebefore alleged, was induced in the making of the said contract by the fraud of the said defendant, Lewis J. Utt, and that the execution of the said contract on the part of the said Utt Investment Co., and the said Lewis J. Utt, was a fraud on the said county of San Diego, and the said action on the part of the said Lewis J. Utt, in the making and executing of the said contract, was a breach of the trust relation then existing betwen the said Lewis J. Utt, and the said county of San Diego.''

The defendant Utt knew that the land which the Utt Investment Company conveyed to the county of San Diego was of no greater value than two hundred and sixty dollars, and knew that the reasonable value of the fencing constructed in pursuance of the agreement was one thousand dollars, and ''he fraudulently and in breach of his duty and in violation of said trust relation to and with the said county of San Diego caused and procured the said contract to be executed by and between the said Utt Investment Company and the said county of San Diego.'' The Utt Investment Company executed and delivered to the county of San Diego its deed for the lands for a highway, ''and caused said easement to be recorded.'' ''The benefits accruing to said lands belonging to said defendants were and are of the reasonable value of seven thousand five hundred dollars, and no damage has accrued or will accrue to said lands of said defendants because of the construction of said highway.'' In doing these things ''defendant took advantage of his official position as such assistant district attorney and took advantage of the confidential relationship which existed between him and the said county of San Diego, and thereby did fraudulently, willfully, and deceitfully, and in violation of said confidential relationship, and of the trust so existing between said county

of San Diego and himself as such assistant district attorney, cause and procure the county of San Diego to expend in the building and construction of said improvements" the sum of three thousand dollars. The contract with the county of San Diego "was executed without authority of law," and is "against public policy and void. The said county of San Diego has no authority, right, or power to enter into said agreement, nor to construct or build the said improvements."

For the understanding of the allegations of this complaint something first must be said of a matter treated lightly therein—the duties and powers of the highway commission and of the supervisors of the county in the matter of the construction of the main highways for which the bonds were voted and sold. This will be found in the statutes of 1907, at page 666. "The highway commission shall consist of three members who shall be especially qualified to have charge of the improvement of highways and shall give bonds for the faithful performance of their duties." When the bonds have been sold the commission proceeds to prepare detailed specifications, plans, and profiles for the work to be done, with power to hire assistance to this end, and when this work is done they present their specifications, plans, and profiles with their recommendations to the board of supervisors, who either adopt or reject them. If the board adopts these, contracts are called for after advertisement, and the board may reject any or all bids. The commission, with the consent of the supervisors, hires "all necessary engineers, inspectors and superintendents to supervise the performance of the contract or to have charge of the doing of the work without contract." Whenever the highway commission shall deem it necessary, the supervisors may, on its recommendation, "cause any highway they propose to improve to be widened, straightened or altered and for that purpose they may acquire land in the name of the county by donation or purchase and may order condemnation."

With this statement of the law before us we are prepared to consider the materiality and sufficiency of the averments of the complaint. Before doing so, however, it becomes necessary to remind the district attorney that the power of this court in dealing with the sufficiency of a complaint is limited to the facts pleaded in the complaint, and however interesting or however valuable may be his statements of fact *dehors*

the record, it can only be said concerning them·that if they were material to the charge, they should have found their place in the complaint, and if not found in the complaint, they have no place in his brief. Also it may be added that if it were enough to charge fraud epithetically, the complaint undoubtedly is adequate. But the test of its sufficiency rests not upon its epithets but upon its facts.

What, then, are the facts which either distinctly appear by averment or, being matters of law, must, so far as the pleading is concerned, be taken as true against the pleader. They may be summarized: The defendant Utt was assistant district attorney of the county and was in his official capacity the *legal* adviser of the highway commission. This commission was composed of men especially qualified to have charge of the development of the highways. ·At the suggestion of the assistant district attorney they made a change in the route of one of the highways. This they had the power to do. Under the arrangement, agreement, and contract to this effect, the defendant Utt was to secure the conveyance of some thirteen acres of land·as a route for the highway. This he did. The highway commissioners, subject to the approval of the supervisors, were to build a fence along the line of the highway. The value of the land conveyed was two hundred and sixty dollars, while the cost of the fence was one thousand dollars. Pausing here, it is to be noted that no reflection in this pleading is cast upon the highway commissioners. Yet, if there is any foundation for the charge of fraud against defendant Utt, his evil machinations could have been accomplished only because the highway commission itself deliberately joined with him in the fraud, or else because the members of the commission were utterly incompetent to fill their positions. Neither of these things is charged, nor are the members or their bondsmen made defendants, and it is a necessary inference, therefore, that these highway commissioners were both upright and competent, and with knowledge of all these matters, agreed to the contract and did not find in it the disparity in values here alleged, or that if there were such a disparity in values, the public interests, for other reasons (as the delay and expense and uncertainty of condemnation), made the contract desirable. But this is not all. The highway commission, under its powers, does nothing more than report to the supervisors. They in turn, with ex-

pert advice and legal assistance, adopt or reject these plans and contracts. Since it is charged that the work under this agreement, which up to this time was purely executory, was performed, it is an unescapable conclusion that the supervisors did so approve. It is not charged that defendant Utt deceived the supervisors. It is not even charged that he advised them, and their legal adviser was the district attorney himself. Presumptively the latter advised them. We have, therefore, a second review of the equities of this contract and the adequacy of its consideration by a second discerning board, which body approved this contract. But the only way this is met is by an averment of ignorance upon the part of the supervisors and other county officials of a knowledge which in the performance of their duties they were bound to possess. Nor is this all. For, waiving this consideration, the supervisors, their agents, and the agents of the highway commission, could not have been ignorant of the cost of this work at the time when they were about to enter upon the actual construction of the fence. Here was ample opportunity for withdrawal and rescission, yet there is no withdrawal nor rescission and the fence is constructed.

What, then, does this complaint amount to? The defendant Utt was the legal adviser of the highway commission, composed of upright, qualified men; they agreed to a change of highway; in consideration of a fence which the county should build there should be conveyed by the land company, in which the defendant was interested, a strip of land for this highway. The contract to that effect was submitted to and approved by the commission and board of supervisors. The county, with full knowledge of the cost of the consideration which was to pay for this strip of land, paid that consideration by constructing the fence. After all this has been done the county institutes an action charging fraud because of an asserted disparity between the value of the land and the cost of the fence. In so doing it fails to implead the highway commissioners and the board of supervisors. Yet there could have been no fraud excepting through their gross ignorance or deliberate design, and the county seeks to exculpate itself upon the ground that its officers were ignorant of that which it was their legal duty to know. True, it is that it is declared that the county of San Diego was induced to execute the contract by the fraud of defendant Utt, but no

fact is stated showing how, in what way, he did or could have so induced the county to enter into it, or could have caused them to perform it after they had entered into it. An abuse of confidence is asserted, but it is accompanied by no single averment of fact showing how defendant Utt—merely the legal adviser of the commission—could have abused its confidence in the matter of land values and added cost of construction, knowledge of which it was their especial duty to have. (*Kisling* v. *Shaw*, 33 Cal. 425, 441, [91 Am. Dec. 644].) Fraud is not to be inferred even when epithetically charged, and saving for the epithets there is nothing in this complaint that militates against the uprightness and fair dealing of the defendant Utt. The demurrer was therefore properly sustained.

The judgment appealed from is affirmed.

Lorigan, J., and Melvin, J., concurred.