(January 2, 1925.)

## A. J. MILNER, Respondent, v. EARL FRUIT COMPANY OF THE NORTHWEST, a Corporation, Appellant.

[232 Pac. 581.].

WRITTEN CONTRACT—MODIFICATION—PAROL EVIDENCE RULE—FRAUD AND MISREPRESENTATION—PLEADING—CHANGE OF THEORY ON APPEAL.—

1. Where parties have entered into a contract or agreement which has been reduced to writing, if the same is complete upon its face and unambiguous, no fraud or mistake being alleged, parol evidence of prior or contemporaneous negotiations or conversations is not admissible to contradict, vary, alter, add to or detract from the terms of the written contract.

2. Where a party seeks to recover on the ground of fraud, the particular facts constituting the fraud must be definitely and positively alleged.

3. A written contract cannot be avoided by one of the parties thereto on the ground that he signed it without reading it and did not understand it. Failing to read the contract or to have the same read to him or to otherwise inform himself as to the nature, terms and conditions thereof constituted gross negligence on his part.

4. Where a modification of a contract is relied upon for recovery, such modification must be pleaded.

5. A party will be held to the theory upon which the cause was tried in the lower court and a different and inconsistent theory cannot be advanced for the first time upon appeal.

APPEAL from the District Court of the Eleventh Judicial District, for Twin Falls County. Hon. Wm. A. Babcock, Judge.

Action on contract. Judgment for plaintiff. *Reversed.*

W. P. Guthrie and Chas. M. Kahn, for Appellant.

Parol evidence is never admissible to vary, alter, add to or detract from the terms of a written contract. (22 C. J.,

Publisher's Note.

1. Parol evidence to add to or vary writing, see note in 56 **Am. St. Rep.** 659.

pp. 1070, 1074, 1098–1104; 10 R. C. L., pp. 1016–1018; Chamberlayne's Hand Book on Evidence, pp. 862–869; 9 Ency. of Evidence, 321–325; Greenleaf on Evidence, 16th ed., sec. 275; *Marks v. Twohy Bros. Co.,* 98 Or. 514, 194 Pac. 675; *Vaughn v. Smith,* 80 Okl. 244, 195 Pac. 754; *First National Bank v. Fickert,* 51 Cal. App. 99, 196 Pac. 112; *Fagan v. Walters,* 115 Wash. 454, 197 Pac. 635; *Rowe v. Emerson-Brantingham Implement Co.,* 61 Mont. 73, 201 Pac. 316; *United States Fidelity & Guaranty Co. v. Grabske,* 111 Kan. 271, 207 Pac. 322; *Jacobs v. Shenon,* 3 Ida. 274, 29 Pac. 44; *Stein v. Fogarty,* 4 Ida. 702, 43 Pac. 681; *First National Bank v. Bews,* 5 Ida. 678, 51 Pac. 777; *Newmeyer v. Roush,* 21 Ida. 106, 123, 120 Pac. 464; *Tyson v. Neill,* 8 Ida. 603, 70 Pac. 790; *Idaho Fruit Land Co. v. Great Western Beet Sugar Co.,* 18 Ida. 1, 107 Pac. 989; *Payette National Bank v. Ingard,* 34 Ida. 295, 200 Pac. 344; *Beebe v. Pioneer Bank & Trust Co.,* 34 Ida. 385, 201 Pac. 717; *Jarrett v. Prosser,* 23 Ida. 382, 130 Pac. 376; *Hurt v. Monumental Mercury Mine Co.,* 35 Ida. 295, 206 Pac. 184.)

Fraud must be pleaded to be relied upon. (*Moser v. Pugh-Jenkins Furniture Co.,* 31 Ida. 438, 173 Pac. 639; *Int. Warehouse Co. v. Dunn,* 80 Or. 528, 157 Pac. 806; *San Diego Co. v. Utt,* 173 Cal. 554, 160 Pac. 657; *Buhler v. Loftus,* 53 Mont. 546, 165 Pac. 601; *Benson v. Johnson,* 85 Or. 677, 165 Pac. 1001; *Harding v. Robinson,* 175 Cal. 651, 166 Pac. 808.)

Ignorance of terms or failure to read contract afford no grounds to avoid it. (13 C. J. 370; 6 R. C. L. 634; *Constantine v. McDonald,* 25 Ida. 342, 137 Pac. 531; *Price v. Shay,* 110 Kan. 351, 203 Pac. 1105.)

No change of theory on appeal is permitted. (3 C. J., sec. 618, p. 718; *Miller v. Sheane,* 120 Wash. 227, 206 Pac. 913; *Forsland v. Forsland,* 46 Cal. App. 405, 189 Pac. 327; *Mt. Vernon Car Mfg. Co. v. Hirsch Rolling Mill Co.,* 285 Mo. 669, 227 S. W. 67; *Kenefick v. Norwich Union Fire Ins. Soc.,* 205 Mo. 294, 103 S. W. 957; *Werner Co. v. Abrams,* 123 N. Y. Supp. 970; *Schneider v. Henley,* 61 Cal. App. 758, 215 Pac. 1036; *Merrill v. Kohlberg,* 29 Cal. App. 382,

155 Pac. 824; *Lebcher v. Lambert,* 23 Utah, 1, 63 Pac. 628; *Blanc v. Connor,* 167 Cal. 719, 141 Pac. 217.)

Oral modifications of the contract must be pleaded. (C. S., sec. 6687, subd. 2; *Bates v. Capital State Bank,* 21 Ida. 141, 121 Pac. 561; 13 C. J., sec. 835, p. 731; *Dunaway v. Roden,* 14 Ala. App. 501, 71 So. 70; *Koons v. St. Louis Car Co.,* 203 Mo. 227, 101 S. W. 49; *Ostrander v. Messmer,* (Mo. App.), 223 S. W. 438; *Ross-Saskatoon Lumber Co. v. Turner Dennis Lowry Lumber Co.* (Mo. App.), 253 S. W. 119; *Ruth Hastings Glass Tube Co. v. Slattery,* 266 Pa. 288, 109 Atl. 695; *Brooks v. Bellows,* 192 Mich. 109, 158 N. W. 152; *Finley v. Pew,* 28 Wyo. 342, 205 Pac. 310, 206 Pac. 148; *O'Connor v. Dingley,* 26 Cal. 19; *Victor Sewing Mach. Co. v. Scheffler,* 61 Cal. 530.)

E. V. Larson, for Respondent.

A written contract may be modified or varied by a subsequent parol agreement where such change or modification has been executed. (6 R. C. L., secs. 298, 299, 301, and authorities cited; 10 R. C. L., p. 1032, sec. 225; 13 C. J., p. 593, sec. 609; Jones on Evidence, sec. 442.)

Where issues are raised in a trial and evidence has been submitted to a jury the judgment of the court or verdict of the jury will not be disturbed where the proof is sufficient. (*Fruitland State Bank v. Lauer,* 34 Ida. 272, 200 Pac. 127; *Lyons v. Lambrix,* 33 Ida. 99, 190 Pac. 356; *Lisenby v. Intermountain State Bank,* 33 Ida. 101, 190 Pac. 355; *Walker v. Edwards,* 32 Ida. 257, 181 Pac. 932; *Neil v. Hyde,* 32 Ida. 576, 186 Pac. 170; *Shaw v. City of Nampa,* 31 Ida. 347, 171 Pac. 1132.)

BUDGE, J.—Respondent in this action seeks to recover from appellant $7,766.04, an alleged balance due for his 1919 crop of apples which he alleges were delivered to the appellant at his special instance and request between September 22, 1919, and November 3, 1919. Appellant in his answer denies specifically the allegations of respondent's complaint and affirmatively alleges that or or about May 24, 1919, it en-

tered into a written consignment contract with respondent wherein it was mutually agreed that the entire apple crop of respondent for the year 1919, estimated at about 18,000 boxes, was to be delivered to appellant. The contract is set out in full and made a part of the answer and contains the usual and general provisions of a consignment contract, including the payment of commission, costs and expenses in connection with the loading, inspecting, shipping and transportation of the fruit to the place of sale or to the points designated by the appellant. It also provides that appellant shall make certain advances for the purchase of spray, box materials, nails, paper and expenses incident to the thinning of the orchard and also provides that appellant shall furnish, from time to time, accounts of all apples sold with debits and credits by reason of advancements, storage charges and other matters not necessary to be mentioned.

The cause was tried to the court and a jury. A verdict was rendered in favor of respondent for $7,766.04 and thereafter judgment was entered on said verdict. A motion for new trial was thereafter made and overruled. This appeal is from the judgment and from an order overruling the motion for a new trial.

Appellant designates five specifications of error which may be discussed and disposed of under specification of error No. 4, which is that "the court erred in admitting certain testimony of the plaintiff, A. J. Milner, relating to negotiations, conversations and transactions prior to the entering into of the written contract." If the action of the court in this regard was erroneous, its action was likewise erroneous in refusing to grant appellant's motion for a nonsuit, a directed verdict and in denying appellant's motion for a new trial. The evidence objected to related to conversations and negotiations that took place between respondent, Lester Campbell and F. V. Martin, the two latter being agents of appellant, prior to entering into the written contract set out in appellant's answer. It might be here observed that one James Swan, who testified that he was present and heard the conversations and negotiations had between the above-

named parties, was permitted to testify to the substance of the conversations and negotiations alleged to have been carried on. We shall consider only such of the testimony given by the respondent as is necessary to dispose of the question raised by the fourth assignment of error.

Respondent testified that Martin and Campbell came to his place on the 19th or 20th of May, 1919, at which time he had a conversation with them, as representatives of the appellant, touching the matter of the consignment to that company of his apple crop for that year. He testified that he said to them that he did not care to ship any of his crop on consignment; that he intended to sell his crop f. o. b. cars at Buhl; that finally Mr. Martin made him a proposition that appellant would make him a price for the apples at picking time, f. o. b. cars at Buhl; and that he would have the privilege of rejecting or accepting the price made by him at that time. He further testified that Mr. Martin said that in making that price or offer they would take ten cents a box from their price and he would then have the absolute price that he would get for his apples, f. o. b cars at Buhl, with the privilege of either accepting or rejecting the price offered at picking time. At this point in the testimony appellant's counsel asked to be permitted to interrogate the witness and with the consent of the court, asked the following question:

"Q. Did you have a written contract with the Earl Fruit Company? A. There was one entered into."

Counsel for appellant then interposed the following objection:

"We object to any testimony which would attempt to vary the terms of the written contract by parol; and we object to it further upon the ground that it is not the best evidence."

Whereupon the court made the following ruling:

"Court: If this preceded the contract and afterward was embodied in the contract, the objection is well taken."

Counsel for respondent then inquired of the witness whether there was a written contract and the witness stated that "there was one entered into following our conversation," meaning the conversation heretofore stated.

The witness was then asked to explain the circumstances under which the contract was entered into and in the course of his explanation stated that: "after we had come to an agreement, it was left with Mr. Campbell to draw up the contract according to our agreement and I was to sign the contract after Mr. Campbell drew it up according to our agreement, but when he delivered that contract to me it was in the evening just about dark and I was unable to read the contract over, and after we had talked the matter over and Mr. Campbell assured me that he had drawn the contract in accordance with our agreement, and after that I says I will sign this contract for you and you can take it back, and I says if the contract is according to our agreement it will stand, and if it is not I will let you know, and I will be over and see you."

The witness was then permitted to testify that the contract delivered and signed by him was not in accordance with the understanding previously had; that he afterward went to Twin Falls and told Mr. Campbell that the contract was not prepared in accordance with the agreement theretofore reached. At the conclusion of the witness' testimony counsel for appellant objected to any testimony as to what the contract contained, or as to the circumstances or conversations leading up to the contract, for the reason that the contract itself was the best evidence of what it contained and of what the agreement was. The court, in making its ruling, used the following language:

"No, I think that is true. A written contract which would be produced would be the best evidence as to what the agreement was, and it would not be changed or modified by anything of that kind."

Whereupon counsel for respondent made the following statement:

"It is the theory of the plaintiff here that the written contract is not in force or operative; that it was signed by the plaintiff upon misrepresentation amounting practically to a fraud perpetrated upon the plaintiff, as the defendant company through its representatives, Mr. Campbell and Mr,

Martin assured this plaintiff that the contract did in fact contain certain terms that it did not as a matter of fact contain, and it was mutually agreed at the time of the signing of the contract that if it did not contain the particular matters and things theretofore agreed upon, that it would be of no force nor effect, no binding force upon the plaintiff.''

From what has been recited and as further disclosed by the record, the court ultimately permitted the witness to testify to all of the conversations and negotiations had prior to and contemporaneously with the execution of the contract. It is insisted by appellant that the admission of this testimony constituted reversible error. It will be observed from a reading of the complaint that neither fraud, misrepresentation nor coercion are alleged. While respondent urges fraud and misrepresentation to avoid the contract he failed to plead it, and this evidence was therefore not admissible. (*Moser v. Pugh-Jenkins Furniture Co.*, 31 Ida. 438, 173 Pac. 639, and cases therein cited; *Buhler v. Loftus*, 53 Mont. 546, 165 Pac. 601; *San Diego County v. Utt*, 173 Cal. 554, 160 Pac. 657; *Interior Warehouse Co. v. Dunn*, 80 Or. 528, 157 Pac. 806; *Benson v. Johnson*, 85 Or. 677, 165 Pac. 1001; *Harding v. Robinson*, 175 Cal. 651, 166 Pac. 808.)

This evidence varied, altered and contradicted the terms of the written contract conceded by both parties to have been signed and delivered. The contract pleaded in the answer is a contract of consignment. The testimony offered by the witness, as well as the allegations of the complaint, tended to establish a contract of sale. If respondent is allowed to introduce proof under his pleadings, he recovers upon an entirely different contract than the one signed and entered into by the parties. The fact that the contract was signed and delivered at about dark, coupled with the further fact, if it be true, that respondent did not read or understand the written contract, is not sufficient to set it aside and constituted nothing more than gross negligence upon the part of appellant in failing to read the contract or have the same

read to him, or to otherwise inform himself as to the nature, terms and conditions thereof. (*Constantine v. McDonald,* 25 Ida. 342, 137 Pac. 531; *Price v. Shay,* 110 Kan. 351, 203 Pac. 1105; 6 R. C. L., p. 624, sec. 43; 13 C. J., p. 370, sec. 249.)

The general rule of law that parol evidence cannot be admitted to alter, contradict, vary, add to or detract from the terms of a written instrument or contract has so frequently been laid down in text-books, encyclopedias and decided cases that no useful purpose would be served by incorporating at length the discussions contained therein. The most usual language used in respect to the parol evidence rule will be found in 22 C. J., pp. 1099–1104, sec. 1459, which is:

" . . . . in the absence of fraud or mistake, parol or extrinsic evidence is not admissible to vary, add to, modify, or contradict the terms or provisions of the written instrument by showing the intentions of the parties or their real agreement with reference to the subject matter to have been different from what is expressed in the writing; for where the parties have deliberately put their engagements into writing in such terms as import a legal obligation, without any uncertainty as to the object or extent of their engagement, all previous negotiations and agreements with reference to the subject matter are presumed to have been merged in the written contract, and the whole engagement of the parties and the extent of their undertaking is presumed to have been reduced to writing. The rule, however, goes even further than this, and it has been established that where the instrument is free from ambiguity, and is in itself susceptible of a clear and sensible construction, parol or extrinsic evidence is not admissible even to explain its meaning or determine the construction of the writing." (See, also, *Butterick Pub. Co. v. Fisher,* 203 Mass. 122, 133 Am. St. 283, 89 N. E. 189. Also 10 R. C. L. 1016–1018, sec. 208:

"The execution of a contract in writing is deemed to supersede all the oral negotiations or stipulations concerning its terms and subject matter which preceded or accompanied

the execution of the instrument, in the absence of accident, fraud, or mistake of fact; and any representation made prior to or contemporaneous with the execution of the written contract is held to be inadmissible to contradict, change or add to the terms plainly incorporated into and made a part of the written contract. . . . . Although oral evidence may be (*erroneously*) admitted without objection it should not be permitted to work an alteration of a written contract between the parties."

This court, in the recent case of *Gardiner v. Gardiner*, 36 Ida. 664, 670, 214 Pac. 219, stated the rule as follows:

"The general rule is well established that, when a contract is reduced to writing, it constitutes the final agreement of the parties as to its subject matter, and prior or contemporaneous oral agreements or statements varying or adding to its terms are not admissible." (See, also, to the same effect, *Jacobs v. Shenon*, 3 Ida. 274, 29 Pac. 44; *Stein v. Fogarty*, 4 Ida. 702, 43 Pac. 681; *First National Bank v. Bews*, 5 Ida. 678, 51 Pac. 777; *Tyson v. Neill*, 8 Ida. 603, 70 Pac. 790; *Newmyer v. Roush*, 21 Ida. 106, 123, Ann. Cas. 1913D, 433, 120 Pac. 464; *Payette Nat. Bank v. Ingard*, 34 Ida. 295, 200 Pac. 344; *Beebe v. Pioneer Bank & Trust Co.*, 34 Ida. 385, 201 Pac. 717; *Hurt v. Monumental Mercury Min. Co.*, 35 Ida. 295, 206 Pac. 184.)

The contract of consignment was admitted by the respondent to be the contract entered into and upon a number of instances he testified that he considered the entire contract as binding upon him and upon appellant with the exception of the consignment features and that he availed himself of all of the provisions of the contract, namely, the acceptance of the money, materials, that portion of the contract which provided for commission, cost of warehouse, inspection and all other charges but insisted upon his right, by parol evidence of conversations and negotiations had prior to and contemporaneously with the execution of the contract, to eliminate therefrom the consignment features and insert in lieu thereof a contract of sale. The contract is unambiguous and free from all uncertainties, and, as admitted by respond-

ent, expressed the final conclusions of the parties, except in the one particular above stated. Under the circumstances we have reached the conclusion that the court committed reversible error, particularly in view of the state of the pleadings, in permitting the witness to testify to any matters, conversations or negotiations alleged to have taken place prior to or contemporaneously with the execution of the contract.

We are also of the opinion that there is no merit in the theory advanced by the respondent that when, as testified to by him, he went to Twin Falls and stated to the agent of appellant that the contract did not contain the agreement entered into in the orchard, and thereupon the agent of appellant stated in substance that irrespective of the written contract they would carry out the agreement entered into in the orchard, this warranted the admission of the respondent's testimony. Upon no theory could this testimony be admitted in the absence of proper allegations of the nature and character of the contract and the particulars wherein the same had been subsequently modified by the parol agreement. Where a modification of a contract is relied upon for a recovery, such modification must be pleaded. (13 C. J., sec. 835, p. 721; *Pioneer Savings & Loan Co. v. Kasper,* 7 Kan. App. 813, 52 Pac. 623; *Williams v. Mt. Hood Ry. & Power Co.,* 57 Or. 251, Ann. Cas. 1913A, 177, 110 Pac. 490, 111 Pac. 17; *Ross-Saskatoon Lumber Co. v. Turner, Dennis & Lowry L. Co.* (Mo. App.), 253 S. W. 119; *Mt. Vernon Car Mfg. Co. v. Hirsch Rolling Mill Co.,* 285 Mo. 669, 227 S. W. 67; *Koons v. St. Louis Car Co.,* 203 Mo. 227, 101 S. W. 49; *George Gifford Co. v. Willman,* 187 Mo. App. 29, 173 S. W. 53; *Ostrander v. Messmer* (Mo. App.), 223 S. W. 438.)

Counsel for respondent urges for the first time in this court that this testimony was admissible for the purpose of showing a subsequent parol modification of the original contract, in the absence of an allegation in his complaint that there was such a modification by subsequent parol agreement. In the trial court the cause was tried upon the theory that the written contract of consignment was a nullity and of no

force or effect. In this court it is insisted that the consignment contract was modified by subsequent parol agreement. These two theories are inconsistent and untenable. We believe the rule to be that parties will be held to the theory upon which their cause was tried in the lower court and a different and inconsistent theory cannot be advanced for the first time upon appeal. (3 C. J. 718, sec. 618; *Miller v. Sheane,* 120 Wash. 227, 206 Pac. 913; *Schneider v. Henley,* 61 Cal. App. 758, 215 Pac. 1036; *Forsland v. Forsland,* 46 Cal. App. 405, 189 Pac. 327; *Blanc v. Connor,* 167 Cal. 716, 141 Pac. 217.)

In view of the conclusion reached we do not deem it necessary to consider and dispose of the other errors assigned. The judgment must be reversed and it is so ordered. Costs are awarded to appellant.

McCarthy, C. J., and William A. Lee, J., concur.

WM. E. LEE, J., Dissenting.—This case was originally assigned to me, and I prepared an opinion which met with the approval of only one of my associates. I am still convinced that it constitutes a correct decision of the questions presented and that the majority opinion does not correctly determine the cause. For this reason I feel that I may be pardoned for thus presenting my views. This action was instituted to recover a balance alleged to be due on a contract for the sale of apples. Respondent alleged that in 1919 he sold and delivered to appellant his crop of apples at an agreed price, and that there was a balance due thereon of $7,766.04. Appellant answered the complaint, and denied that it had purchased any apples from respondent, but alleged affirmatively that it made and entered into a contract, in writing, with respondent, wherein and whereby it agreed to handle respondent's entire crop of apples on consignment; and that it so handled the entire crop of apples, rendered an account thereof to respondent, and paid over to him all that was due. The written contract was made a part of the answer.

Respondent testified that two officers of appellant, Campbell and Martin, came to his place to see him in May, 1919, and that "They . . . . wanted to talk apple business with me, and wanted to know if I had contracted my crop, and I told them that I had not, and they said they would like to have the privilege of handling it, and wanted to know if I would contract the crop and ship it on consignment to the Earl Fruit Company, and I said that I did not care to ship any of my crop on consignment, as I had had about all of that kind of experience that I cared for, and that I intended to sell my apple crop f. o. b. the cars at Buhl, and that I believed I could do so; and they then tried to show me that I was making a mistake by doing so and argued the question along that line and tried to get me to consign my apples to the Earl Fruit Company, but I still held out that I would not consign my apples to them. Finally, Mr. Martin made me a proposition, and his proposition was that the Earl Fruit Company would make a price for the apples at picking time—a price on the market, free on board cars at Buhl, Idaho, and that I would have the privilege of rejectment or acceptance of their price at picking time when the apples would be ready for loading on cars. Mr. Martin also said that in making that price or offer, that from their price I was to take ten cents a box from their price—the price they offered me for the apples at picking time, free on board cars at Buhl, and that I would have then the absolute price that I would get for my apples on board the cars at Buhl, and that I would have the privilege of either accepting or rejecting their price for the apples at that time."

At this point, appellant objected to any testimony "which would attempt to vary the terms of a written contract by parol"; and urged that "it was not the best evidence." The court announced that "if this preceded the contract and afterwards was embodied in it, the objection is well taken." Respondent then continued and testified without objection that he agreed to the proposition they made to him; that it was agreed that Campbell should draw up the contract according to their understanding; that thereafter Campbell

brought the contract to him "about dark" when respondent could not read it; that Campbell assured him that the contract was prepared in accordance with their agreement; that he thereupon signed it, but that he said to Campbell:

" . . . . If the contract is according to our agreement, it will stand, and if it is not, I will let you know, and I will be over and see you."

Respondent further testified, without objection, as follows:

"I went to Twin Falls and went into the office where Mr. Campbell was, and pulled out the contract, and I says, 'This contract is not in accordance with the conversation and agreement we had in the orchard—it does not have Mr. Martin's proposition in it at all, that he made to me, with the exception of the money part of it.' . . . . Mr. Martin had agreed to let me have money to finance the picking of the apples, also, if I need any money at thinning time, he would advance me some then."

An objection was here made that the contract was the best evidence of its contents, and also to any testimony relating "to the circumstances or conversation leading up to the contract." The objection was sustained, presumably because the contract was the best evidence, as the witness was then testifying to matters subsequent to the signing of the contract. After some discussion between counsel, appellant stated:

"I would like to have the record show the questions and answers relating to a subsequent parol contract, or any attempt to vary or modify the written contract, to go in under the objection of defendant."

Respondent then testified, without further objection, as follows:

"I came to see Mr. Campbell in Twin Falls. I came into his office. I pulled out the contract and showed him the contract, and told him it was not in accordance with our agreement, that the contract which he had drawn up was not in accordance with our talk and did not contain Mr. Martin's proposition; and he says, 'Why, we never put those

things in a contract,' he says, 'but the Earl Fruit Company will surely carry out their contract under their agreement as we have talked it over, and it will be all right."

Without objection respondent was permitted to testify further to the same conversation, as follows:

"I told Mr. Campbell that this contract, I says, 'This contract that you brought out there is only a one-sided contract that you have got made up here, and you didn't combine in this contract the oral agreement that we made there in the orchard, and that we agreed should be in this contract,' and he says, 'Well, no, but we will carry that out just exactly as we agreed to and you need not have any fear or doubt about that.' "

Testimony on behalf of respondent then showed that some money was advanced by appellant, and, when the apples matured, Campbell made respondent a price for the "King Davids," a definite price per box for each of certain grades, f. o. b. Buhl; that after the "King Davids" were delivered, respondent asked Campbell for prices on the different grades of "Jonathans," and that he was given a price on such apples, f. o. b. Buhl; that thereafter, Campbell gave him a price on the "Delicious" variety, f. o. b. Buhl; that, for the sum per box offered, he sold and delivered all his apples to appellant, except one car of mixed varieties; and that appellant not being able to make a price on the mixed varieties, such car was delivered on consignment.

The evidence on behalf of appellant consisted of a denial of practically all of the conversations testified to by respondent relating to a sale of the apples. Appellant claimed that it took all of respondent's apples on consignment, sold them, paid the freight, auction, brokerage, inspection, storage and other charges, and paid to respondent all of the proceeds of the sale of the apples that remained. Appellant explained that it received orders for apples of certain varieties and grades, and that it did. not make respondent any price on his apples at any time, but that it gave him an opportunity to fill such orders; that the apples did not come up to the grades; and that they were necessarily handled on consign-

ment.   Appellant moved to strike all the respondent's testi-
mony from the files "with the exception of the preliminary
negotiations on the written contract," on the ground that it
was an attempt to vary the terms of a written contract,
which motion was denied.

I have thought it necessary, because of the somewhat un-
usual nature of the case and the grounds upon which it is
sought to reverse the judgment, to quote some of the material
parts of the testimony, together with some of the objections
made by appellant.   Appellant moved for a nonsuit at the
close of the plaintiff's case, for a directed verdict at the
close of the evidence, and for a new trial.   The appeal is
from the judgment and from the order overruling motion
for new trial, and appellant assigns as error the refusal of
the court to grant said motions, the insufficiency of the evi-
dence to sustain the verdict and the admission of "certain
testimony of plaintiff . . . relating to negotiations, conver-
sations and transactions prior to the entering into of the
written contract."   The foregoing specifications are treated
by appellant under two heads: The first relates to the admis-
sion of certain evidence, and the second to the insufficiency
of the evidence.   Because of the position taken by the ma-
jority, it should be stated that *none of the specifications of
error question either the sufficiency of the complaint, or
that the action is not based upon the written contract, or
that there is no allegation of a modification of the written
contract, or of fraud or mistake, or that no reformation is
sought.*

Respondent was permitted, without timely objection, to
testify to the negotiations preceding the execution of the
contract, and to detail the terms and conditions which it
was agreed should be embodied in the contract.   Appellant
claims that this was error, in that all prior negotiations were
embodied in the contract, and that parol evidence was not
admissible to vary or modify its terms.   Respondent con-
tends that such testimony was admissible, not as tending to
vary or change the terms of the written contract, but to
establish the terms of an agreement that was not embodied

in the written contract; it being respondent's position that appellant had failed to embody their agreement in the contract that was signed; that when he later found this out, he went to appellant and that they then and there agreed that the terms and conditions agreed upon prior to the signing of the contract would be carried out; and that in proving the terms of the subsequent agreement, it was necessary to show what was agreed upon before the written contract was signed.

Appellant contends that the contract between the parties was reduced to writing; that it was complete within itself; and that conversations or negotiations occurring prior to the making of the contract and which vary or contradict any of its terms are not, with certain exceptions, admissible in evidence. This is a general rule and has been upheld by this court. (*Gardiner v. Gardiner*, 36 Ida. 664, 214 Pac. 219; *Jarrett v. Prosser*, 23 Ida. 382, 130 Pac. 376; *Tyson v. Neill*, 8 Ida. 603, 70 Pac. 790; *First National Bank v. Bews*, 5 Ida. 678, 51 Pac. 777; *Stein v. Fogarty*, 4 Ida. 702, 43 Pac. 681.) In saying that such evidence is not admissible, I mean that it will not be admitted when proper and timely objection is made. In the case at bar, objection was not made to the admission of testimony by respondent as to the terms and conditions which it was agreed should be embodied in the contract to be signed, until after such testimony had been given, and respondent, in response to questions of his own as well as appellant's counsel, both on cross-examination and redirect examination, in the absence of any objection whatever, fully testified to all such prior negotiations and agreements. The motion to strike, heretofore referred to, expressly excepted from its contents testimony of "the preliminary negotiations on the written contract." Without determining, therefore, whether the court properly admitted the evidence relating to such prior negotiations in order to permit respondent to show the exact terms of the oral agreement respondent claims was entered into after the signing of the written contract, I am of the opinion that appellant, not having made timely objection, cannot now be heard to com-

plain of the admission of such evidence. (*Walling v. Walling*, 36 Ida. 710, 214 Pac. 218; *State v. Baker*, 28 Ida. 727, 156 Pac. 103; *Trask v. Boise King Placers Co.*, 26 Ida. 290, 142 Pac. 1073.)

The majority opinion, in effect, holds that the evidence relating to preliminary negotiations, even though unobjected to, was inadmissible, and that such evidence was, after it had been admitted, ineffectual to vary the written contract. This seems to be the rule in Massachusetts. (*Butterick Publishing Co. v. Fisher*, 203 Mass. 122, 133 Am. St. 283, 89 N. E. 189.) I am not ready to adopt such a rule until the question is properly presented. It was not mentioned in the briefs nor on either of two oral arguments, and is not necessary to a decision of this cause. But disregarding the testimony of respondent with respect to the negotiations preliminary to entering into the written contract, there was sufficient evidence that the parties, after they had signed the contract, orally agreed to disregard the consignment agreement and that appellant would purchase and respondent would sell his crop of apples. This they had a right to do. To corroborate the contention that this was done, there is considerable competent evidence that thereafter appellant quoted to respondent prices for his apples and that respondent delivered his apples in response to offers of appellant to purchase them at prices quoted.

Appellant also contends that because of the insufficiency of the evidence, his motion for a nonsuit renewed at the close of all the evidence, his motion for a directed verdict and his motion for a new trial should have been sustained, the alleged insufficiency of the evidence having been properly specified in each motion. Respondent, by his evidence, sought to establish a contract of sale. Appellant denied the existence of any contract of sale and sought to establish a consignment contract. The evidence of the respective parties supported their contentions. The court submitted these two contradictory contentions to the jury under instructions with respect to which no question was raised. The court and the jury saw the witnesses and heard them testify, and the

jury evidently believed the evidence submitted by respondent, for it could not have found a verdict for him on any other hypothesis than that appellant had contracted to buy his apples. And while there may be doubt as to the existence of some of the things about which respondent testified, this court is not in a position to pass upon the credibility of the witnesses. Our province, in considering this assignment is merely to determine if there is substantial evidence to sustain respondent's theory upon which the verdict is based. In overruling appellant's motion, it is evident that the trial court was of the opinion that the evidence was sufficient, and that the verdict should not be set aside upon any of the grounds included in the motions. From the careful examination I have given the record, I am satisfied that there is substantial evidence to sustain the verdict of the jury. On the ground, therefore, of both reason and precedent, this court should not disturb the judgment.